# ALMA L. HILLIUS v. NELSON HOTEL COMPANY, INC. AND OTHERS.[1]

March 3, 1933.

No. 29,153.

[1]Reported in 247 N. W. 385.

*F. H. Peterson,* for appellants.

*Christian G. Dosland* and *Richardson, Thorp & Wattam,* for respondent.

DIBELL, Justice.

Action to recover damages for fraud alleged to have been practiced upon the plaintiff in the sale of a hotel property in Moorhead. Certain findings were submitted to the jury, which were found favorably to the defendants. The court then made conclusions of law for the defendants. The plaintiff moved for a new trial on various grounds. The ones important here are the ones mentioned in G. S. 1923 (2 Mason, 1927) § 9325 (1, 2), referring generally to irregularities in the proceedings at the trial and misconduct of the jury. The court granted a new trial. The defendants appeal.

■ What the facts are in a case like this and whether prejudice resulted are almost wholly for the trial court. No one knows the situation as does the trial judge; and his findings on the facts and his discretion in determining what should be done are substantially conclusive. Hewitt v. Pioneer-Press Co. 23 Minn. 178, 23 Am. R. 680; Koehler v. Cleary, 23 Minn. 325; Rush v. St. Paul City Ry. Co. 70 Minn. 5, 72 N. W. 733; State v. Salverson, 87 Minn. 40, 91 N. W. 1; Leonard v. Schall, 125 Minn. 291, 146 N. W. 1104, Ann. Cas. 1915C, 922; Akin v. Lake Superior Cons. I. Mines, 103 Minn. 204, 114 N. W. 654, 837; Evertson v. McKay, 124 Minn. 260, 144 N. W. 950; State v. Snow, 130 Minn. 206, 153 N. W. 526; Magnuson v. Bouck, 168 Minn. 39, 209 N. W. 896; State v. Wheeler, 179 Minn. 557, 230 N. W. 91; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 7103a-7104. The absence of a settled case does not permit a review under the record before us. Moore v. Phoenix Ins. Co. 100 Minn. 393, 111 N. W. 263.

■ The case was a vigorously contested one. It continued six days. The troubles which we meet come from the doings of one Wagner. He was not a party to the action but was a witness for the defendants and was interested in its result. He rode frequently with the juror Krabbenhoft to the courthouse and mingled with him and with other jurors. The trial court characterizes his conduct:

"The affidavits in support of the motion for a new trial herein on the grounds of misconduct of the jury and irregularities occurring at the trial make several charges, some of which are directly denied by affidavits presented on behalf of defendants. There are facts admitted, however, without serious dispute, which seriously impugn the integrity of this verdict and the fairness of the trial. The trial of the issues before the jury consumed six days. The case was vigorously contested. Some of the issues presented are not free from doubt, although the answers made by the jury to the questions of fact submitted to them cannot be said to be unsupported by the evidence. A finding either way upon the issues of fact might readily be sustained. * * * Upon the question of what the true facts were regarding the amount of rental paid by the Nelsons, Mr. Wagner was a very important witness for defendants. * * * He took a deep interest in this case, which, of course, he had a perfect right to do. He attended the trial continuously until the latter part of it, when he testified for defendants. He mingled freely with the jurors, both upon this case and the other members of the venire. He and the juror Krabbenhoft were long time friends, and morning, noon and night during a part of the trial at least he rode with Mr. Krabbenhoft from the business section of the city to the courthouse, a distance of about a mile. They were often alone on these rides but occasionally had other jurors with them in the car. Had Mr. Wagner been a party plaintiff or defendant in this action, the foregoing facts would necessitate the granting of this motion under our own decisions. The fact, however, that he was to a certain extent at least interested in the outcome of the case brings the matter within a number of our own decisions and the general rule laid down by other courts. * * * It is denied in the affidavits of both Wagner and Krabbenhoft that they talked about this case, it being their claim that they talked about current topics. The association between Mr. Wagner and the jury was not merely casual; it continued at recess times and, as stated, by his frequent rides with one of the jurors, and it is not under the rule necessary for the

losing party to this suit to show just what the nature of these communications may have been."

The trial court's finding that there was misconduct and an improper interference with the jury is sustained; and it was within its discretion to grant a new trial for misconduct and irregularity.

█ The moving papers refer to the furnishing of cigars and candy to the jurors by the defendants and the talk had that the jurors might give the defendants a banquet. Cigars and candy were sent, but better counsel prevailed and there was no banquet.

It is enough to say that the furnishing of candy and cigars was wholly out of place. The worst of it is that the clerk should have suggested such a thing and that a bailiff should help carry the plan through. Officers of the court present at the trial should be in their demeanor as impassive as the judge and should not betray pleasure or otherwise at what is done by the jury. They are not present to indicate pleasure or displeasure; and a betrayal of adverse feeling does not conduce to a feeling on the part of litigants or others that a fair trial is in progress. Litigants owe nothing to the jurors. Jurors should not receive favors of the litigants nor give them to them; neither should officers or court attendants. When the jurors are done they may safely leave without giving or receiving handshakings or expressing feelings of gratitude one to another as for favors done.

Such conduct as is shown is unseemly, may be harmful, and cannot be tolerated. There were other cases on the calendar awaiting trial. Jurors and litigants and attorneys and others waiting about saw that a favorable verdict was appreciated; and they saw that the jurors themselves had in mind a banquet for the victors. Such doings are hardly explicable. A court room is a place for the orderly settlement of differences. Attorneys refrain from mingling overmuch with the jurors, though they need not neglect ordinary civilities. Court officers should be courteous and accommodating. It is not their time or place to win the favor or goodwill of jurors. It cannot be that jurors and court officers and litigants usually do such things. Indeed the defendants, when it was

suggested by an officer that they give candy and cigars, were reluctant because they felt the impropriety of it all; and the same notion of impropriety impressed the jurors. We have no feeling that the jurors and litigants actually meditated wrong. They were thoughtless. They should have avoided even a ground of suspicion of favoritism toward the defendants, who were long their neighbors, or unfairness to the plaintiff, who was nearly a stranger. And the officers of the court are the more to be blamed. The whole matter was unseemly. Neither jurors nor judges want presents for doing their work; and court officers and attorneys should not participate in such doings.

We end our comment with a quotation from the trial court's note:

"In the moving papers the plaintiff in this action lays stress upon the fact that immediately following the rendition of the verdict defendants sent candy and cigars to the jury and the same were delivered by one of the court deputies. The treating of the jurors was suggested by the clerk of court in a telephone conversation which he had with one of the defendants immediately following the rendition of the verdict. At the time these refreshments were furnished the jury had been discharged, although the case was pending in court awaiting decision by the trial judge based upon the findings of the jury. The court is unable to find that the furnishing of these refreshments had any influence on the verdict, although it was highly improper in view of the fact that the panel was engaged in regular term work, and the establishing of a custom of this kind would certainly be detrimental to the conduct of jury business. The most that can be said of the incident is that it characterized the friendly feeling existing between defendants and the jurors, which under the circumstances may have been very natural, since the verdict was favorable to defendants. The incident of furnishing refreshments is not controlling upon this motion and the other facts above referred to, constituting what the court considers misconduct, might not be considered important under other conditions, but the case on trial involving a substantial amount, being vigorously con-

tested between the plaintiff, who was comparatively a stranger, having lived in Moorhead only a few months, and the defendants and Mr. Wagner, who are long-time residents and well acquainted with the officers and some of the jurors at least, render the situation of sufficient importance to bring the court to the conclusion that a new trial should be granted."

It should be added that counsel for the defendants was unaware of what was transpiring. He would not have sanctioned what took place.

Order affirmed.

